UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL MURRAY, et al.,

    *Plaintiffs*,

v.

COUNTY OF HUDSON, et al.,

    *Defendants*.

Civil Action No. 17-2875 (JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This case concerns allegations of wrongdoing related to the Hudson County Department of Corrections. Plaintiffs Daniel Murphy, Patricia Aiken, Omar Ortiz, and EdPDLAW, Ltd. (collectively, "Plaintiffs") bring a number of claims against Defendants County of Hudson ("County"), Hudson County Department of Corrections ("HCDOC"), Thomas A. DeGise, Oscar Aviles, Kirk Eady, Howard Moore, Tish Nalls-Castillo, and John/Jane Does 1-25 (collectively, "Defendants"). Currently pending before the Court is Defendant Aviles' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 13. The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant Aviles' motion to dismiss is **GRANTED**.

---

[1] Plaintiffs' Amended Complaint will be referred to hereinafter as "Am. Compl." (D.E. 5); Defendant Aviles' brief in support of his motion to dismiss the Amended Complaint will be referred to hereinafter as "Aviles Br." (D.E. 13); Plaintiffs' brief in opposition will be referred to hereinafter as "Opp. Br." (D.E. 14). Defendant Aviles did not submit a brief in reply.

## I. FACTUAL BACKGROUND[2]

At the outset, the Court notes that Plaintiffs' allegations are at times unclear. With the exception of Defendant Eady, Plaintiffs often fail to include specific allegations against particular Defendants. Instead, Plaintiffs make many of their allegations against "Defendants" as a whole. Plaintiffs also fail to include many relevant dates. The Court nevertheless attempts to summarize Plaintiffs' factual allegations below.

The Parties

Plaintiff Murray was a corrections officer employed by the County until April 1, 2016. Am. Compl. at ¶ 1. While employed, Murray served in various capacities for the Police Benevolent Association ("PBA") Local No. 109. *Id.* Plaintiff Ortiz was a Lieutenant in the HCDOC until October 14, 2015. *Id.* at ¶ 3. While working for HCDOC, Ortiz served in various union positions, including president of PBA Local No. 109 and president of the PBA Superior Officers Association ("SOA"). *Id.* Plaintiff Aiken is the owner of Plaintiff EdPDLAW, LTD ("EdPDLAW"), a New Jersey business that provided services to law enforcement unions. *Id.* at ¶¶ 2, 19. Beginning in August 2010, EdPDLAW entered into an agreement with the PBA to provide services for two years. *Id.* at 20. The agreement was renewed for an additional two years in August 2012. *Id.*

Defendant DeGise is the County Executive and is responsible for the administration of County policy and decision-making. *Id.* at ¶ 6. Defendant Aviles was the Director of the HCDOC. *Id.* at ¶ 7. Defendant Eady was the Deputy Director of the HCDOC. *Id.* at ¶ 8. Eady was responsible for overseeing the operations of the HCDOC and reported to Aviles. *Id.* at ¶ 25. Defendant Moore was the County's Assistant Director of Personnel in the Department of Finance

---

[2] The factual background is taken from Plaintiffs' Amended Complaint, D.E. 5. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

and Administration. *Id.* at ¶ 9. Defendant Nalls-Castillo was a captain in the HCDOC, Deputy Director of the HCDOC, and the provisional Director of the HCDOC. *Id.* at ¶ 10.

Plaintiffs' Allegations

Plaintiffs bring the most specific allegations against Eady. Plaintiffs allege that Eady undertook numerous retaliatory actions against Plaintiffs after Plaintiffs hired EdPDLAW and "undertook an investigation into the proper titles of Defendant Aviles, Defendant Eady . . . Thaddeus Caldwell, and Internal Affairs Sergeant Ricardo Aviles, Defendant Aviles' cousin." *Id.* at ¶ 32. According to Plaintiffs, "[a]s a result of that investigation it was determined that Defendants Aviles and Eady, as well as Caldwell held civilian titles while remaining in the Police and Fire Retirement System." *Id.* This information was then published on the EdPDLAW website. *Id.* Aiken also published information on the website regarding the promotion of Aviles' cousin. *Id.* at ¶ 34. Aiken alleged that the promotion was done without anyone's knowledge and in violation of the New Jersey Civil Service regulations. *Id.* Later, the website also published information about Nalls-Castillo. *Id.* at ¶ 50.

At this point, Plaintiffs claim that "Defendant Eady made it known to people that he was going to retaliate against PBA/SOA representatives including Plaintiffs Murray and Ortiz, and that he would get Plaintiff Aiken fired from working with the PBA." *Id.* at ¶ 36. Plaintiffs claim that Eady issued a memorandum that banned all liquid substances from the correctional facility to "creat[e] discontent with the PBA/SOA membership and at the PBA/SOA representatives." *Id.* at ¶ 37. Eady also organized an event that involved maximum security inmates which created a safety risk. *Id.* Plaintiffs allege that when asked about his orders, Eady "responded in front of several witnesses that his orders were in retaliation for the Plaintiffs bringing up issues about him to the County Freeholders." *Id.* at ¶ 38. Plaintiffs further claim that Eady submitted Plaintiffs' names to

the Ku Klux Klan ("KKK") in order to hurt their reputations, including submitting Murray's name twice. *Id.* at ¶¶ 55-60. Critically, Plaintiffs allege that Eady was secretly recording Plaintiffs' telephone conversations. *Id.* at ¶¶ 67-74. Eady used a computer application that made "the phone numbers on the Caller ID show up as another person . . . and record the conversation," while "disguis[ing] his voice as a female voice." *Id.* at ¶¶ 70-71.[3]

On January 14, 2012, Ortiz wrote to Aviles, with a copy to DeGise, alleging that Eady and Nalls-Castillo brought false discipline charges against him in retaliation for his union activities. *Id.* at ¶ 39. On February 28, 2012, PBA/SOA representatives had a meeting with Aviles regarding Eady's "strange and erratic" behavior. *Id.* at ¶ 40. Aviles took no action. *Id.* On March 1, 2012, the PBA filed a grievance with Aviles regarding Eady's behavior. *Id.* at ¶ 41. Aviles again took no action. *Id.* Because Aviles took no action, a letter was sent on March 7, 2012 to Aviles, DeGise, County Counsel, and to the County Freeholders demanding intervention as to Eady. *Id.* at ¶ 42. Around the same time as the letter, information was published to the EdPDLAW website "regarding a newly created position that was given to Aviles' cousin, Ricardo Aviles." *Id.* at ¶ 43.

Later, on May 15, 2012, an email was sent to the Hudson County Freeholders, DeGise, and PBA members stating that Eady had been overheard making threats against Murray and Ortiz. *Id.* at ¶ 62. The Hudson County Prosecutors Office and Aviles took no action after the email was sent. *Id.* at ¶ 64. Plaintiffs claim that Aviles instead gave Eady additional power – allowing Eady to

---

[3] Plaintiffs state that Eady used "a website called . . . 'Evil Operator' . . . to place and record telephone calls from July 26, 2010 through at least August of 2012" and that "[t]he initiation of Defendant Eady's use of 'Evil Operator' coincides with Plaintiff Murray becoming the Grievance Committee Chairman for the PBA, EdPDLAW beginning its relationship with the PBA, and Plaintiff Ortiz being the President of the SOA." Am. Compl. at ¶ 90.

On January 14, 2014, Defendant Eady was arrested and charged with one count of illegal wiretapping. *Id.* at ¶ 89. Eady was later found guilty at trial and sentenced to 21 months in prison. *Id.* at ¶ 102.

4

discipline Ortiz in retaliation for union activities. *Id.* at ¶ 65. In sum, Plaintiffs claim that "Aviles would have to approve of all of the actions that Defendant Eady took in his official capacity" and that "Defendant Aviles was openly antagonistic to the PBA and would use any information available to him, including information that Defendant Eady provided to him." *Id.* at ¶¶ 109-10.

Plaintiffs largely bring the remainder of their factual allegations against "Defendants" as a whole – without delineating the acts of each particular defendant. For example, once the articles were published, Plaintiffs claim that "Murray, Ortiz and Aiken began receiving harassing phone calls" from numbers that were later disconnected. *Id.* at ¶¶ 35, 43. The calls had a female voice, and "[t]he calls indicated on the caller ID that they were from phone numbers that were familiar to [P]laintiffs, including the PBA office at the correctional facility. *Id.* at ¶¶ 44-45. Calls were specifically placed to Ortiz's home and to Aiken's son. *Id.* ¶¶ 45-46.

Plaintiffs also generally claim that the "Defendants had discussions and communications amongst themselves with the intent on damaging and weakening the PBA/SOA in its ability to represent its membership in all aspects including, but not limited to, depleting union funds, representation in negotiations, disciplinary matters, [and] grievance issues." *Id.* at ¶ 28. Plaintiffs contend that Plaintiff Ortiz was also "regularly targeted for discipline by the Defendants" including attempting to hold a disciplinary hearing while Ortiz was receiving treatment in the hospital. *Id.* at ¶¶ 51-52. As to Murray, Plaintiffs claim that "[a]s a direct result of the Defendants['] behavior, actions, and inactions, Plaintiff Murray sustained psychological and physical injuries that resulted in him being unable to perform his duties as a corrections officer." *Id.* at ¶ 118. These actions included "purposefully and knowingly dissemin[ating] information and depict[ing] Plaintiff Murray as being racist against African Americans and all minorities." *Id.* at ¶ 127. Plaintiffs also continued to put Murray on the work schedule even after he had submitted his retirement

5

application, resulting in Murray using his accumulated vacation time and changing his retirement date. *Id.* at ¶¶ 119-21. Plaintiffs claim this was done in retaliation for Murray's PBA advocacy and because he was responsible for the criminal charges against Eady. *Id.* at ¶ 122. Plaintiffs also describe a specific incident in April 2015, in which "the Defendants permitted flyers to be posted around the correctional facility, in violation of departmental regulations, which falsely accused Defendant Murray for actions for which he was not responsible in order to turn the PBA membership against him." *Id.* at ¶ 99. Defendants took no action to determine who put up the postings. *Id.*

## II. PROCEDURAL HISTORY

On September 12, 2016, Plaintiffs filed a Complaint. D.E. 1. On July 7, 2017, Judge Falk signed a consent order allowing Plaintiffs to file an Amended Complaint. D.E. 4. Plaintiffs then filed their Amended Complaint on July 13, 2017. D.E. 5. The Amended Complaint brings thirteen counts. Count One brings an action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of the Fourth Amendment against "Defendant Eady with the knowledge and approval of some or all of the other Defendants" and against "Defendants." Am. Compl. at ¶¶ 133-136. Count Two brings an action pursuant to Section 1983 for violations of 18 U.S.C. § 2511(1)(c) and 18 U.S.C. §2511(1)(d) against "Defendant Eady with the knowledge of at least some of the Defendants." *Id.* at ¶¶ 137-139. Count Three alleges a violation of N.J.S.A. 2A:156-1, *et seq.* against "Defendant Eady with the knowledge of at least some of the Defendants." *Id.* at ¶¶ 140-42. Count Four brings an action for tortious interference with a business relationship against "[t]he Defendants." *Id.* at ¶¶ 143-48. Count Five brings an action for intentional infliction of emotional distress against "[t]he Defendants." *Id.* at ¶¶ 149-51. Count Six brings an action for negligent infliction of emotional distress against "[t]he Defendants." *Id.* at ¶¶ 152-54. Count Seven alleges that

6

"Defendants violated the policies and procedures which apply to all employees of the Defendant County and HCDOC." *Id.* at ¶¶ 155-59. Count Eight brings an action for *respondeat superior* liability against Defendant County and Defendant HCDOC. *Id.* at ¶¶ 160-62. Count Nine alleges violations of N.J.S.A. 34:19-1, *et seq.* by "Defendants." *Id.* at ¶¶ 163-65. Count Ten brings a "Common Law *Pierce* claim for retaliation" against "Defendants." *Id.* at ¶¶ 166-68. Count Eleven alleges violations of N.J.S.A. 2C:41-1, *et seq.* against "Defendant County, Defendant HCDOC, [and] Defendants." *Id.* at ¶¶ 169-175. Count Twelve alleges violations of Title VII and N.J.S.A. 10:5-1, *et seq.* against "Defendant Eady and other Defendants." *Id.* at ¶¶ 176-80. Count Thirteen alleges violations of the New Jersey Constitution and N.J.S.A. 10:6-2, *et seq.* against "Defendants." *Id.* at ¶¶ 181-83.

On September 18, 2017, Defendant Oscar Aviles filed the motion to dismiss presently before the Court. D.E. 13. On October 6, 2017, Plaintiffs filed a brief in opposition, D.E. 14, to which Aviles did not reply. Defendants have also filed Answers. D.E. 12 (Defendant Eady); D.E. 15 (all other Defendants).

### III. LEGAL STANDARD[4]

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[4] The Court notes that Plaintiffs provide the incorrect standard of review for motions to dismiss. *See* Opp. Br. at 2. *Twombly* and *Iqbal* provide the Supreme Court's most recent rulings on the standard for motions pursuant to Rule 12(b)(6). Plaintiffs instead cites cases before *Twombly* and *Iqbal*, which concern a different standard.

7

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV. ANALYSIS

Defendant Aviles moves to dismiss Counts Four and Nine, as well as all "official capacity" claims against him. Additionally, Aviles moves to dismiss Plaintiff's entire Amended Complaint as an impermissible "group pleading."

### a. Impermissible Group Pleadings

Aviles argues that Plaintiffs' allegations constitute impermissible "group pleadings" and should therefore be dismissed. Plaintiffs respond that "[t]he separate Counts state who they are against" and that "[t]he mere fact that a cause of action is against all of the defendants because they participated in the illegal activity or condoned it as the employer does not make the pleadings vague." Opp. Br. at 8.

8

Courts within this district have not permitted complaints with group pleadings to go forward. *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing the complaint because the "Plaintiffs' Complaint fails to separate out the liability for each defendant"); *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."). Group pleadings are generally improper because they do not satisfy the requirements of Federal Rule of Civil Procedure 8. *See Shaw v. Housing Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (finding that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." (citation omitted)). This is necessary to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, when defendants are grouped together, a court cannot determine whether a complaint has set forth plausible allegations as to each particular defendant.

Here, the Court finds that Plaintiffs' Amended Complaint fails to put Aviles on adequate notice of the specific claims against him. Plaintiff does include some factual allegations specific to Aviles. *See* Am. Compl. at ¶¶ 29, 30, 39, 40, 41, 42. However, it is unclear how these factual allegations relate to the counts brought by Plaintiffs against "Defendants" as a whole. Plaintiffs' clearest allegations concern Eady, particularly Eady's illegal wiretapping of Plaintiffs. However, it is not clear from the Amended Complaint precisely what Plaintiffs are alleging vis-à-vis Aviles and wrongdoing. As best as the Court can determine, Aviles is alleged to have shown some animosity towards the unions, legitimately worked with the other Defendants (but not necessarily conspired or agreed to act have acted unlawfully in conjunction with other Defendants), and did

9

not respond to certain complaints by Plaintiffs. The Court did not see any particular allegations as to Aviles concerning illegal wiretapping, the KKK, or improper phone calls.

Counts One, Two, and Three state that Eady engaged in wrongful conduct "with the knowledge and approval *of some or all* of the other Defendants." *Id.* at ¶¶ 134-136, 138-139, 141-142 (emphasis added). The Court does not know if Aviles is even subject to these counts as they appear to be based on pure speculation by Plaintiffs. Counts Four, Five, Six, Seven, Nine, Ten, Eleven, Twelve, and Thirteen again bring general allegations against "Defendants" without clarifying what conduct each Defendant engaged in. *Id.* at ¶¶ 143-154, 163-183. Plaintiffs need to specify the factual allegations that are brought against Aviles and plausibly plead Aviles' alleged wrongdoing. Based on Plaintiffs' Amended Complaint, the Court cannot determine what claims are brought against Aviles and what factual allegations support these claims. Accordingly, Plaintiffs' Amended Complaint, as brought against Aviles, is dismissed without prejudice. Plaintiffs will be permitted the opportunity to amend their pleadings in a Second Amended Complaint. Because the Court grants Plaintiffs the opportunity to amend their pleadings, the Court will analyze Aviles' other grounds for dismissal.

### b. Failure to File a Tort Claims Notice

Aviles argues that all claims by EdPDLAW are barred because the entity failed to file a tort claim notice. More specifically, Aviles argues that the New Jersey Tort Claims Act ("NJTCA") requires a party bringing suit against a public entity or employee to file a tort claim notice within 90 days of the accrual of the party's cause of action. Def. Br. at 3. Plaintiffs contend that Aikens is the sole owner of EdPDLAW and that her personal notice applies to EdPDLAW. Pl. Opp. at 3. Alternatively, Plaintiff contends that this issue is not appropriate at the motion to dismiss stage. *Id.*

Under the NJTCA, a party must, with some exceptions, file a tort claim notice against a public entity "within 90 days of accrual of the claim." N.J.S.A. 59:8-8. Both parties seem to assume that EdPDLAW did not file a tort claim notice, but that Aikens did file such a notice in her personal capacity. However, neither party provides any legal analysis or caselaw that considers the issue of whether the filing of a tort claim notice by a sole owner of a business entity is sufficient to fulfill the requirements of N.J.S.A. 59:8-8. Because neither party provides any legal analysis on this issue, and because the Court grants Aviles' motion on alternate grounds, the Court denies relief on this ground without prejudice.

### c. Count Four (Tortious Interference with a Business Relationship)

Aviles next argues that Plaintiffs' claim for tortious interference with a business relationship fails because Aiken does not allege the existence of any contract. Def. Br. at 4. Plaintiffs respond that a contractual relationship is not necessary for such a claim. Opp. Br. at 4. Plaintiffs' Amended Complaint alleges, in part, that

> Defendants purposefully and knowingly either took deliberate action or permitted deliberate actions to occur against the Plaintiffs for the purpose of causing Plaintiffs Murray and Ortiz harm at work and causing Plaintiff Aiken harm to her business relationship with the PBA and other potential clients.

Am. Compl. at ¶ 144.

"The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." *Vosough v. Kierce*, 437 N.J. Super. 218, 234 (App. Div. 2014) (quotation omitted). Courts have described the "protectable right" as "a *prospective* economic or contractual relationship." *BH 329 NB LLC v. CBRE, Inc.*, No. 16-8141, 2017 WL 3641566, at *5 (D.N.J. Aug.

11

24, 2017) (emphasis added) (quoting *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996)). Plaintiffs are correct that a contract is a not necessary element of the claim. Therefore, the Court denies Defendant Aviles' relief on this ground.

### d. Count Nine (Conscientious Employee Protection Act)

Aviles' argues that Count Nine should be dismissed because Plaintiffs failed to file their claim within the one-year statute of limitations period under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et seq.* Def. Br. at 5-6. Plaintiffs respond that (1) Defendants waived their right to challenge the CEPA statute of limitations and that (2) Defendants point to the wrong date for the initiation of the limitations period. Opp. Br. at 5-6.

CEPA provides, in relevant part, that: "Upon a violation of any provisions of this act, an aggrieved employee or former employee may, *within one year*, institute a civil action in a court of competent jurisdiction." N.J.S.A. 34:19-5 (emphasis added). "A cause of action under the statute arises upon the commission of a violation by the employer." *Daniels v. Mut. Life Ins. Co.*, 340 N.J. Super. 11, 16 (App. Div. 2001).

Aviles argues that because Plaintiffs filed their suit on July 13, 2017, the statute of limitations had already run for Murray and Ortiz. Def. Br. at 5. This argument is misleading. Plaintiffs filed their *Amended* Complaint on July 13, 2017, D.E. 5, but filed their initial Complaint on April 26, 2017. D.E. 1. The operative date is the filing of the initial Complaint. Because Aviles has not addressed this date in his arguments, the Court denies his request for relief without prejudice.

The Court briefly notes that that it also has concerns with Plaintiffs' arguments. Plaintiffs first argue that "[i]t was agreed by all of the parties and memorialized in a Consent Order signed by the Court, that the Defendants waived their right to challenge the claims based upon timeliness."

12

Opp. Br. at 5. However, the Consent Order does not address this issue. *See* D.E. 4. Plaintiffs also seem to argue that while Plaintiff Murray retired on April 1, 2016, the relevant date for the statute of limitations should be January 10, 2017, the date on which the Pension board made his disability determination. Opp. Br. at 5. It is not clear to the Court that this is a viable argument in light of the Appellate Division's decision in *Daniels*, 340 N.J. Super. at 17–18. Yet, the Court does not reach the merits of this argument because it is denying Aviles' request for relief.

### e. "Official Capacity" Claims

Aviles also argues that to the extent Plaintiffs bring their claims against Aviles in his official capacity as the Director of HCDOC, these claims should be dismissed because they are identical to those claims that are brought against HCDOC and the County. Def. Br. at 7-8. Aviles states that "courts have held that an officer sued in an official capacity cannot be named a party in an action asserting identical claims against the municipality. *Id*. at 7. Aviles cites three cases in support of this argument. First, Aviles cites *Duran v. Warner*, No. 07-5994, 2013 WL 4483518 (D.N.J. Aug. 20, 2013). In *Duran*, the court granted summary judgment to a defendant who was sued in his official capacity as chief of police when identical federal claims were brought against the municipality. *Id*. at 7. The court reasoned that because "[m]unicipal departments are not separate legal entities from the municipality they serve, and therefore cannot be named parties in conjunction with the municipality. . . . a claim against a police chief in his official capacity is in essence a claim against the municipality." *Id*. at 6. Next, Aviles cites to *Owens v, City of Atl. City*, 2008 U.S. Dist. Lexis 47584 (D.N.J. 2008). In *Owens*, the court granted summary judgment for the director of public safety for Atlantic City because "if plaintiff is asserting his [federal] claim against [the director] in his official capacity, that claim is barred because a claim against a state or local official is actually a claim against the governmental entity." *Id*. at 33. Aviles lastly cites to

*Whaumbush v. City of Philadelphia*, 747 F. Supp. 2d 505 (E.D. Pa. 2010), in which a court dismissed federal claims against certain Philadelphia officials in their official capacities because the claims were duplicative of the plaintiffs' claims against the city. *Id.* at 510, n.2.

As to federal claims, suits against persons in their official capacities are simply another way of pleading claims against the governmental entity of which the person is an agent. *See e.g.*, *Kentucky. v. Graham*, 473 U.S. 159, 165–66 (1985) (suits against government officials in his or her "official-capacity" is actually a suit against the entity itself). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (internal citations omitted). For this reason, all federal claims that are brought against Aviles in his official capacity are dismissed with prejudice as duplicative of Plaintiffs' claims against the County. However, Aviles provides no argument regarding Plaintiffs' state law claims against him in his official capacity. As a result, the Court does not reach this issue.

### f. New Jersey Civil RICO Claims

The Court also notes that Plaintiffs fail to fulfill the heightened pleading requirements for claims under New Jersey RICO. Like its federal counterpart, N.J.S.A. 2C:41-2(c) ("New Jersey RICO") makes it unlawful to be "employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41–2(c). A NJRICO claim is comprised of the following elements:

> the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that

the defendant participated through a pattern of racketeering activity;
and (6) that the plaintiff was injured as a result of the conspiracy.

*Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 4392038, at *12 (D.N.J. Oct. 2, 2017) (quotation omitted). Claims under New Jersey RICO are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Galicki v. New Jersey*, No. 14-169, 2016 WL 4950995, at *22 (D.N.J. Sept. 15, 2016) ("A claim brought pursuant to NJ RICO is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b)."), *reconsideration denied*, 2016 WL 7494257 (D.N.J. Dec. 1, 2016).

The Court finds that, in addition to being impermissible group pleadings, Plaintiffs' New Jersey RICO allegations do not fulfill the heightened pleading requirements of Rule 9(b). Aviles also correctly notes that Plaintiffs' pleadings do not include any allegations that Defendants' alleged racketeering activity affected trade or commerce – a required element under the statute. *See id*.

## V. CONCLUSION

Defendant Aviles' motion to dismiss (D.E. 13) Plaintiffs' Amended Complaint is **GRANTED**. Plaintiffs' federal claims against Aviles in his official capacity as Director of HCDOC are dismissed with prejudice. The remainder of Plaintiffs' claims against Aviles are dismissed without prejudice. Plaintiffs may file a Second Amended Complaint within thirty (30) days, if they so choose, consistent with this Opinion. If Plaintiffs fail to file a Second Amended Complaint, the Court's dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 14, 2018

_____
John Michael Vazquez, U.S.D.J.