**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DANIEL MURRAY, *et al.*,

                Plaintiffs,

       v.

COUNTY OF HUDSON, *et al.*,

                Defendants.

**Civil Action No. 17-2875 (JXN) (LDW)**

**OPINION**

<u>**NEALS**</u>, District Judge

      This matter comes before the Court on the motion of Defendants Hudson County, New Jersey ("Hudson County"), Hudson County Department of Corrections (the "Hudson DOC"), Thomas A. DeGise ("DeGise"), Howard Moore ("Moore"), in his official capacity, and Trish Nalls-Castillo ("Nalls-Castillo") (collectively, the "County Defendants") for summary judgment (ECF No. 102); the motion of Defendant Kirk Eady ("Eady") for summary judgment (ECF No. 103); Plaintiff Patricia Aiken's ("Aiken") opposition thereto (ECF No. 108); Plaintiffs Daniel Murray ("Murray") and Omar Ortiz's ("Ortiz") (collectively, the "Plaintiffs") opposition thereto (ECF Nos. 114-15)[1]; Defendant Eady's reply (ECF No. 119);  and the County Defendants' replies (ECF Nos. 120-21).  Jurisdiction is proper pursuant to 28 U.S.C. §1331 and §1343. Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

      The Court has carefully considered the parties' submissions and heard oral argument on May 23, 2023.  For the reasons stated herein, the County Defendant's motion for summary judgment (ECF No. 102) is **GRANTED**, and Plaintiffs' Amended Complaint (ECF No. 5) (the "Amended Complaint") in its entirety is **DISMISSED** *with prejudice* as to the County Defendants.

---

[1] Murray filed additional opposition papers (ECF Nos. 110-11, 116).

Eady's motion for summary judgement (ECF No. 103) is **GRANTED in part** and **DENIED in part**, **GRANTED** as to Counts One, Six, Seven, Eight, Nine, Ten, Twelve, and Thirteen in the Amended Complaint, which are **DISMISSED** *with prejudice*, and **DENIED** as to Counts Two, Three, Four, and Five, which remain as to Defendant Eady only.

## I.      FACTUAL BACKGROUND

This case concerns allegations of wrongdoing by the County Defendants and Eady. The facts as alleged in the Amended Complaint are summarized as follows. Until April 1, 2016, Murray was a corrections officer employed by Hudson County, where he also served in various capacities for the Police Benevolent Association's (the "PBA") Local No. 109. (Am. Compl. ¶ 1, ECF No. 5.) Until his termination on October 14, 2015, Ortiz was a Lieutenant in the Hudson DOC. (*Id.* ¶ 3.) Ortiz also served in various union positions, including president of PBA Local No. 109 and president of the PBA Superior Officers Association ("SOA''). (*Id.*)

DeGise is the County Executive for Hudson County and is responsible for the administration of County policy and decision-making. (Am. Compl. ¶ 6.) Eady was the Deputy Director of the Hudson DOC, where he was responsible for overseeing the operations of the Hudson DOC and reported to Oscar Aviles ("Aviles"), the Director of the Hudson County DOC. (*Id.* ¶¶ 8, 25.) Nalls-Castillo was a captain in the Hudson DOC, Deputy Director of the Hudson DOC, and the provisional Director of the Hudson DOC. (*Id.* ¶ 10.)

Aiken is the owner of EdPDLAW, LTD ("EdPDLAW"), a New Jersey law firm that provided services to law enforcement unions. (*Id.* ¶¶ 2, 19.) Beginning in August 2010, EdPDLAW entered into an agreement with the PBA to provide legal services for a period of two years, which was renewed for an additional two years in August 2012. (*Id.* at 20; County Statement of Material Facts ("SOMF"), p.18, ¶ 1, ECF No. 102-14.)  The relevant facts related to Eady follow.

Plaintiffs allege that Eady undertook numerous retaliatory actions against them after the PBA hired EdPDLAW, which allegedly "undertook an investigation into the proper civil service titles held by [] Aviles, [] Eady [. . .], Thaddeus Caldwell [("Caldwell")], and Internal Affairs Sergeant Ricardo Aviles, [] Aviles' cousin." (*Id.* ¶ 32.) According to Plaintiffs, "[a]s a result of that investigation it was determined that [] Aviles and Eady, as well as Caldwell, held civilian titles while remaining in the Police and Fire Retirement System." (*Id.*) This information was then published on the EdPDLAW website. (*Id.*) Aiken also published information on the website regarding the promotion of Aviles' cousin. (*Id.* ¶ 34.) Aiken alleged that the promotion was done without anyone's knowledge and in violation of the New Jersey Civil Service regulations. (*Id.*) The website also published information about Nalls-Castillo. (*Id.* ¶ 50.)

Plaintiffs claim that "Eady made it known to people that he was going to retaliate against PBA/SOA representatives, including [] Murray and Ortiz, and that he would get [] Aiken fired from working with the PBA." (*Id.* ¶ 36.) Plaintiffs further claim that Eady engaged in a series of acts to effectuate the retaliation, for example, he issued a memorandum that banned all liquid substances from the prison to "creat[e] discontent with the PBA/SOA membership and the PBA/SOA representatives." (*Id.* ¶ 37.) Eady also organized an event that involved maximum security inmates that created a safety risk. (*Id.*) Plaintiffs allege that when asked about his orders, Eady "responded in front of several witnesses that his orders were in retaliation for the Plaintiffs bringing up issues about him to the [Hudson] County Freeholders."[2] (*Id.* ¶ 38.)

Plaintiffs further claim that Eady submitted Plaintiffs' names for membership to the Ku Klux Klan ("KKK") to hurt their reputations, including submitting Murray's name twice. (*Id.* ¶¶ 55-60.) Moreover, that Eady was secretly recording Plaintiffs' telephone conversations. (*Id.* ¶¶ 67-

---

[2] Pursuant to a statutory amendment, the title "Freeholder" has been replaced with "County Commissioner."  N.J.S.A. § 40:20-1.

74.) This was done by Eady allegedly using a computer application that made "the phone numbers on the Caller ID show up as another person ... and record[ed] the conversation" while "disguis[ing] his voice as a female voice." (*Id.* ¶¶ 70-71.)

On January 14, 2012, Ortiz wrote to Aviles, with a copy to DeGise, alleging that Eady and Nalls-Castillo brought false disciplinary charges against him in retaliation for his union activities. (*Id.* ¶ 39.) On February 28, 2012, PBA/SOA representatives met with Aviles regarding Eady's "strange and erratic" behavior. (*Id.* ¶ 40.) Aviles took no action. (*Id.*) On March 1, 2012, the PBA filed a grievance with Aviles regarding Eady's behavior. (*Id.* ¶ 41.) Aviles again took no action. (*Id.*)  Considering this, a letter was sent on March 7, 2012, to Aviles, DeGise, County Counsel, and to the Hudson County Freeholders demanding intervention as to Eady. (*Id.* ¶ 42.) Around the same time as the letter, information was published on the EdPDLA website "regarding a newly created position that was given to Aviles' cousin, Ricardo Aviles." (*Id.* ¶ 43.)

On May 15, 2012, an email was sent to the Hudson County Freeholders, DeGise, and PBA members stating that Eady had been overheard making threats against Murray and Ortiz. (*Id.* ¶ 62.) The Hudson County Prosecutors Office and Aviles took no action after the email was sent. (*Id.* ¶ 64.) Plaintiffs claim that Aviles instead gave Eady additional power - allowing Eady to discipline Ortiz in retaliation for union activities. (*Id.* ¶ 65.) In sum, Plaintiffs claim that "Aviles would have to approve of all of the actions that [] Eady took in his official capacity" and that "Aviles was openly antagonistic to the PBA and would use any information available to him, including information that [] Eady provided to him." (*Id.* ¶¶ 109-10.)  The relevant facts related to "Defendants" as a whole, whose actions Plaintiffs do not delineate, follow.

Plaintiffs claim that "Murray, Ortiz and Aiken began receiving harassing phone calls" from numbers that were later disconnected. (*Id.* ¶¶ 35, 43.) The calls had a female voice, and "[t]he calls

indicated on the caller ID that they were from phone numbers that were familiar to [P]laintiffs, including the PBA office at the correctional facility. (*Id.* ¶¶ 44-45.) Calls were specifically placed to Ortiz's home and to Aiken's son. (*Id.* ¶¶ 45-46.)  Plaintiffs similarly claim that the "Defendants had discussions and communications amongst themselves with the intent on damaging and weakening the PBA/SOA in its ability to represent its membership in all aspects including, but not limited to, depleting union funds, representation in negotiations, disciplinary matters, [and] grievance issues." (*Id.* ¶ 28.)

Plaintiffs contend that Ortiz was "regularly targeted for discipline by the Defendants" including attempting to hold a disciplinary hearing while Ortiz was receiving treatment in the hospital. (*Id.* ¶¶ 51-52.) As to Murray, Plaintiffs claim that "[a]s a direct result of the Defendants['] behavior, actions, and inactions, [] Murray sustained psychological and physical injuries that resulted in him being unable to perform his duties as a corrections officer." (*Id.* ¶ 118.) These actions included "purposefully and knowingly dissemin[ating] information and depict[ing] [] Murray as being racist against African Americans and all minorities." (*Id.* ¶ 127.) Plaintiffs also contend that Defendants continued to put Murray on the work schedule even after he had submitted his retirement application, resulting in Murray using his accumulated vacation time and changing his retirement date. (*Id.* ¶¶ 119-21.) Plaintiffs claim this was done in retaliation for Murray's PBA advocacy and because he was responsible for the criminal charges against Eady. (*Id.* ¶ 122.)

Plaintiffs also describe a specific incident in April 2015, in which "the Defendants permitted flyers to be posted around the correctional facility, in violation of departmental regulations, which falsely accused [] Murray of actions for which he was not responsible in order to turn the PBA membership against him." (*Id.* ¶ 99.) Defendants took no action to determine who posted the flyers. (*Id.*)

In response to Plaintiffs' claims, Eady states that in 2012 he surreptitiously recorded several phone calls between members of the Correction Officers Union. (Eady's Brief in Support of Summary Judgment at 2, ¶ 1, ECF No. 103.) Eady recorded calls using a publicly available telephone application marketed by a company called Prankdial. (*Id.* ¶ 3.) From March 8, 2012, through July 6, 2012, Eady used a paid service offered by Prankdial called Evil Operator that permitted a user to "spoof" two people into believing that they called each other and recorded the call. (*Id.* ¶ 6.) Eady was convicted of illegal wiretapping in violation of 18 USC § 2511(1)(a) and sentences to 21 months in prison. *See US v. Eady,* 648 Fed. Appx. 188 (3d Cir. 2016). (ECF No. 103 at 2, ¶ 2.); (Aiken Opp'n Bfr., Ex. A24.)

## II.   **PROCEDURAL HISTORY**

On July 13, 2017, Plaintiffs filed the thirteen-count Amended Complaint against DeGise, Eady, Nalls-Castillo, the Hudson County and Hudson DOC. (*See generally* Am. Compl.)  On September 18, 2017, Aviles filed a motion to dismiss. (ECF No. 13.) On June 14, 2018, Judge Vazquez granted Aviles's motion and dismissed all claims, but provided Plaintiffs 30 days to file an amended complaint, which Plaintiffs did not do. (ECF Nos. 17-19.) The Court, therefore, dismissed all claims against Aviles with prejudice. (ECF No. 19.)

On October 16, 2020, Plaintiffs' Counsel filed a motion to withdraw representation of Plaintiffs Aiken and EdPDLAW only. (ECF No. 55.) On January 5, 2021, with the consent of Aiken, the Court granted the motion. (ECF No. 64.) The Order provides that while Aiken would proceed *pro se*, she could not represent EdPDLAW as she is precluded by law from doing so.  On March 22, 2021, Aiken, proceeding *pro se*, filed a motion for leave to file a Second Amended Complaint (the "SAC") (ECF No. 73), which was denied on June 2, 2021. (ECF Nos. 82-83.)[3]

---

[3] The SAC sought to add new counts including failure to train and supervise and violations of the Americans with

In February and March 2022, the Defendants filed their respective motions for summary judgment.[4] The Court held oral argument on May 23, 2023.

## III.   **LEGAL STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it can "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation

---

Disabilities Act. It also sought to rename Aviles as a defendant and add County Counsel Donato J. Battista, Esq. as a new defendant. (ECF No. 82 at 8.) The Magistrate Judge found that Aiken, "failed to demonstrate good cause as to why the date for amendment in the scheduling order, February 28, 2019, should be altered." (*Id*.) Additionally, the Magistrate Judge concluded that "in the absence of some legitimate reason, it would be unfair to allow further amendment at this time." (*Id.* at 9.) More importantly, the Magistrate Judge found that:

> With respect to renaming Aviles as a defendant, the claims against him have already been dismissed, with prejudice, nearly three years ago. Plaintiff does not appear to allege mistake or inadvertence, but again seems to suggest that prior counsel failed to act following the Court's dismissal of the claims. … Any new causes of action against the County, the Department of Corrections, Aviles as its Director, and Battista as County Counsel would likely be barred for failure to file a timely Tort Claims Notice. *See* N.J.S.A. 59:8-8 (a claimant's right to institute an action against a public entity is conditioned upon the claimant having filed a Notice of Claim pursuant to within 90 days following accrual of the action). Moreover, according to Defendants, Battista has nothing to do with the operation of the Correctional Center or the Union related to it.

(*Id*. at 9, 10.)

[4] Additionally, on March 17, 2022, this Court entered a Consent Order Dismissing the action against Mr. Moore, Assistant Director of Personnel in the Department of Finance and Administration and Count Eleven of the First Amended Complaint. (*See* ECF Nos. 113, 117, 122.)

omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322. If the movant satisfies its burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp*., 79 F.3d 1358, 1366 (3d Cir. 1996). Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001). Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact." *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted). Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000).

IV.     **DISCUSSION**

A.     **(Count One) - 42 U.S.C. §1983, 4th Amendment Illegal Search and Violation of the Right to Privacy**

In Count One of the Amended Complaint, Plaintiffs assert that Eady utilized his official position to gain information about PBA officers Murray and Ortiz to disseminate to other Defendants in violation of the search and privacy protections of Fourth Amendment of the U.S. Constitution. (Am. Compl. ¶¶ 134-35.) Plaintiffs claim that the information obtained was used against the PBA in "negotiations and other labor dealings" and that all Defendants were "acting under the color of state law." (*Id*.)[5] Specifically, Plaintiffs assert that Eady used what is identified as the "evil Operator" application to record telephone calls of the PBA to gather information about

_____
[5] The PBA is not a party to the litigation. (Plaintiff's Statement of Undisputed Material Facts ¶ 6, ECF No. 108-1.)

the PBA and the Plaintiffs to use against them.  (Am. Compl. ¶¶ 103, 106.) Plaintiffs further claim

that the information gathered was shared with others to gain control of the PBA.  (*Id*. ¶ 107.)

Courts interpret claims under § 1983 as requiring proof of two elements: (1) violation of a

federal right, privilege, or immunity; and (2) acting under color of state law.  *Grammar v. John J.*

*Kane Reg'l Ctrs. -Glen Hazel,* 570 F.3d 520, 525 (3d Cir. 2009).  If a defendant fails to act under

color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983

fails as a matter of jurisdiction, *Polk Cnty. v. Dodson,* 454 U.S. 312 (1981), and there is no need

to determine whether a federal right has been violated.  *Rendell–Baker v. Kohn,* 457 U.S. 830, 838

(1982).

"[G]enerally, a public employee acts under the color of state law while acting in his official

capacity or while exercising his responsibilities pursuant to state law."  *West v. Adkins*, 487 U.S.

42, 48 (1988).  Thus, the acts of public employees in the ambit of their personal pursuits are plainly

excluded.  "Whether a police officer is acting under color of state law turns on the nature and

circumstances of the officer's conduct and the relationship of that conduct to the performance of

his official duties."  *Ocasio v. County of Hudson*, No. 14-811, 2020 WL 2731165, *5 (D.N.J. May

26, 2020) (quoting Martinez *v. Colon*, 54 F.3d 980, 986 (1st Cir.), *certif. denied* 516 U.S. 987

(1995)). Absent any actual or purported relationship between the officer's conduct and his duties

as a police officer, the officer cannot be acting under color of state law. *Barna v. City of Perth*

*Amboy*, 42 F.3d 809, 816 (3d Cir. 1994).

Plaintiffs assert that as the Assistant Director of the Hudson DOC, Eady was tasked with

the day-to-day management of the facility, which included interfacing with the union representing

the correction officers. (Plaintiffs' Brief in Opposition ("Pltf. Brf. Opp.") at 8, ECF No. 115.)

Plaintiffs further assert that Aviles stated during his deposition that Eady was his "number two

guy." (Merick H. Limsky Cert. ("Limsky Cert."), Ex. V, Aviles Deposition, Vol. I, 155:10, ECF No. 111-22.) Further, Director Aviles delegated significant authority to Eady regarding the day-to-day operations of the correctional facility (Limsky Cert. Ex. V, Aviles Deposition, Vol. I, 148: 23 to 149:13 and 172:16-19.)   Moreover, that Eady was given significant latitude to operate independently. (Limsky Cert. Ex. W, Aviles Deposition, Vol. II, 210:2-10, ECF No. 111-23.)

Plaintiffs cite *United States v. Classic,* 313 U.S. 299, 326 (1941), wherein the Court interpreted the "under color of" state law language to refer to misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Plaintiffs argue that the evidence is clear that the purpose of Eady's interception and recording of Plaintiffs' phone calls was to advance the interests of the employer, who encouraged him to take whatever actions were needed against the union. (*See* Pltf. Brf. Opp. at 9.) Plaintiffs further contend that it benefitted Hudson County to have Eady causing discord within the PBA. (*Id*.) Eady's motivation and any "benefit" to Hudson County from Eady's actions, however, do not amount to the County Defendants' liability.

To establish the County Defendants' liability under the Federal Civil Rights Act, 42 U.S.C. § 1983, Plaintiffs must demonstrate Eady's actions were in "execution of" Hudson County's "policy or custom" to trigger liability. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). This concept is applied analogously to the New Jersey City Rights Act, N.J.S.A. 10:6-1, *et. seq.* (the "New Jersey Civil Rights Act") as it is "modeled" after § 1983 and in accordance with *Ramos v. Flowers,* 429 N.J. Super. 13, 23 (App. Div. 2012).

Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell,* 436 U.S. at 694. Similarly, an act

performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Monell,* 436 U.S. at 690–691 (citation omitted). However, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Ibid.*

Here, while Defendant Eady did record the telephone calls of the Plaintiffs, he utilized the publicly available service of a company to make Plaintiffs believe that they were calling each other, none of which was dependent upon his position as Deputy Director. Indeed, the use of the Evil Operator telephone service did not require Eady to be Deputy Director or a public employee at all. (*See* County Defendants' SOMF ¶ 11.)  Eady also did not utilize public funds to pay for his use of the telephone service. Accordingly, Eady's actions were dependent on Eady's authority as Deputy Director. Instead, Eady's actions were conclusively determined to be criminal as Eady was convicted of illegal wiretapping in violation of 18 USC § 2511(1)(a). *See U.S. v. Eady,* 648 F.App'x 188 (3d Cir. 2016). (ECF No. 103 at 2, ¶ 2.) Accordingly, Plaintiffs have not presented a genuine issue of material fact as to any actions of the County Defendants to prove policy or custom.

Further, the lack of any nexus between Eady's actions of recording telephone calls while employing a publicly available telephone service and his position as Deputy Director eliminates the possibility that he was acting under the color of law. Moreover, the record contains no evidence of a policy or custom of the County Defendants. Accordingly, the Court will grant summary

judgment and dismiss Count One *with prejudice* as to the County Defendants and Eady.

**B.**   **Claims under the Federal and State Wiretap Statutes: (Count Two) - 42 U.S.C. § 1983 claim for violation of 18 U.S.C. §§ 2511(1)(c), (1)(d) and (Count Three) - Violation of N.J.S.A. 2A:156-1 et seq.**

Counts Two and Three in Plaintiffs' Amended Complaint allege violations of 18 U.S.C. §§ 2511(1)(c) and (1)(d) and the New Jersey Wiretapping and Electronic Surveillance Control Act N.J.S.A. 2A:156A-1 et. seq. ("NJWESC").  Both the Federal and State statutes provide for civil suits. In the Federal context, the suit is brought against the "person or entity" that engaged in the violation, 18 U.S.C. §2120(a), and under State law a suit is brought against, "any person who intercepts... or procures any other person to intercept ... such communication." N.J.S.A. 2A:156-24.

At Count Two, Plaintiffs specify Eady in the Count heading, however, they allege more broadly as to all Defendants in the body of the Count.  (*See* Am. Compl. ¶ 280.) In Count Three, Plaintiffs assert that Eady, with the knowledge of other Defendants, used "electronic means to listen to private telephonic communications." (*Id*. ¶ 141.) There is no further description of the alleged violation of NJWESC. While Plaintiffs attempt to bootstrap the fact of Eady's transgressions to include all Defendants, no proof has been presented that any other Defendant was aware of Eady's activities until August 2012, when a tort claims notice was served.

As previously stated herein, Eady utilized the publicly available service of a company to record the calls and make Plaintiffs believe that they were calling each other, none of which were dependent upon his position as Deputy Director. Moreover, the use of the Evil Operator telephone service did not require Eady to be Deputy Director or a public employee. (*See* County Defendants' SOMF ¶ 11.) Again, Plaintiffs have not offered any proof that any Defendant, other than Eady, engaged, or conspired to engage, in the interception or use of any wire, oral or electronic

communication. Accordingly, Counts Two and Three are dismissed *with prejudice* as to the County Defendants, but remain as to Eady only.

### C.   The New Jersey's Tort Claims Act

Under N.J.S.A. 59:8-8, a claimant's right to institute an action against a public entity is conditioned upon the claimant having filed with the entity a notice of claim within 90 days of the accrual of the cause of action. After one year, "the court is without authority to relieve Plaintiffs from their failure to have filed a notice of claim, and a consequent action at law must fail." *Speer v. Armstrong,* 168 N.J. Super. 251, 255-56 (App. Div. 1979) (citation omitted).

Plaintiffs' Tort Claims Notice, filed on August 15, 2012, asserts claims of unlawful interception of telephonic and electrical communication by Defendant Eady specifically identifying and describing Eady's actions as illegal. (ECF No. 102-10 at 2-3.) Plaintiffs' Complaint and Amended Complaint, however, set forth claims of harassment, retaliation, discrimination, emotional distress, and other common law claims, which constitute different claims against different parties. Pursuant to N.J.S.A. 59:8-4, the notice must include "[t]he name or names of the public entity, employee or employees causing the injury, damage or loss, if known[,]" N.J.S.A. 59:8-4(e). Accordingly, the notice did not substantially comply with the notification requirements of New Jersey's Tort Claims Act.

Substantial compliance means that the notice has been given in a way which, though technically defective, substantially satisfies the purpose for which notices of claims are required. *Pilonero v. Twp. Of Old Bridge*, 236 N.J. Super. 529, 535 (App. Div. 1989). The notice prescribed by N.J.S.A. 59:8-4 is designed to provide the public entity with sufficient information to enable it to promptly evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and to also engage in settlement negotiations prior to the commencement of suit.

*Newberry v. Township of Pemberton*, 319 N.J. Super. 671, 675 (App. Div. 1999). (Despite knowing the cause of an accident, the Plaintiffs fail to include details with respect to a Notice of Claim and therefore the court held the Notice was deficient).  Plaintiffs' Tort Claims Notice fails to meet this standard.

In February 2014, Plaintiffs filed the original Complaint alleging incidents and conduct wholly unmentioned and unrelated to Plaintiffs' Tort Claims Notice. Outside of their "telephonic and electronic interceptions" allegations, Plaintiffs failed to provide any information necessary for a prompt investigation until long after the alleged events. Plaintiffs' Tort Claims Notice did not give Defendants any indication of the other bases for Plaintiffs' claims of liability in this matter. Arguably, even if the Notice encompassed all the relevant facts, the absence of liability of the County Defendants would remain as they are not liable for the criminal conduct of their employees, particularly when that conduct has nothing to do with the employee's job, the job the employee is authorized to do, and where the employer has no knowledge of the conduct. *G.A.H. v. K.G.G.,* 238 N.J. 401, 415-416 (2019); *Snell v. Murray,* 117 N.J. Super. 268 (Law Div. 1971) aff'd, 121 N.J. Super. 215 (App. Div. 1972) (where a police officer stealing money from a dice game was found to be outside the scope of his employment and was pursuing his own ends).

Accordingly, as part of its review the Court will determine which state claims are barred and thereby subject to dismissal.

### D.    (Count Four) - Tortious Interference with a Business Relationship

Count Four of Plaintiffs' Amended Complaint alleges, in part, that,

> Defendants purposefully and knowingly either took deliberate action or permitted deliberate actions to occur against the Plaintiffs for the purpose of causing Plaintiffs Murray and Ortiz harm at work and causing Plaintiff Aiken harm to her business relationship with the PBA and other potential clients.

(Am. Compl. ¶ 144.)

To maintain a claim for tortious interference with a business relationship, a plaintiff must demonstrate the following elements: "(l) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with 'malice;' (3) causal connection between interference and the loss of prospective gain; and (4) actual damages. *Printing Mart-Morristown v. Sharp Elec. Corp.,* 116 N.J. 739, 751 (1989). New Jersey courts have held that claims for tortious interference with a business relationship can only be maintained against a third party and not a party to the business relationship. *Id.* The federal courts have further held that such claims by an employee against a supervisor must be dismissed where the supervisor is acting within the scope of his employment. *Horvath v. Rimtec Corp.,* 102 F.Supp.2d 219, 236 (2000). The exception to an employee claim for tortious interference with employment relations as to a supervisor arises where the employee asserts that the supervisor acted outside the scope of his employment and/or for their own personal gain. *Horvath,* 102 F.Supp.2d at 236 (citation omitted).

The tortious interference claims against the County Defendants are barred due to the deficient Notice of Tort Claim. Further, these claims are barred on the additional basis that the County Defendants were Plaintiffs Murray and Ortiz's former employer, *i.e.*, a "party to the business relationship," therefore not subject to the tortious interference claim. *See Printing Mart-Morristown,* 116 N.J. at 751. As to Eady, however, Eady served as Plaintiffs' supervisor and Plaintiffs allege that Eady's criminal actions were outside the scope of his employment, which falls within the *Horvath* exception. Accordingly, the Court's review of the viability of this claim follows.

Murray and Ortiz had a reasonable expectation of economic advantage through their employment and thereby satisfy the first element. As to the second element, "[f]or purposes of

this tort, '[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff.' (Citation omitted). Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown,* 116 N.J. at 751. Eady's recording of Plaintiffs' calls constitutes "interference done intentionally and with malice," thereby satisfying the second element.

As to the third element, a causal connection between interference and the loss of prospective gain, Plaintiffs Murray and Ortiz generally asserts that, "So great was the emotional distress caused by Eady . . . that Plaintiff Murray was ultimately determined to be totally and permanently disabled from continuing to perform the duties of a corrections officer due to the actions of the Defendants. The Plaintiffs submit that they have undergone years of mental health treatment arising out of emotional distress caused by Eady's intentional conduct." (Plaintiffs' Brief in Response at 20, ECF No. 112.)  Each Plaintiffs' proofs as to the connection between interference and loss requires a separate analysis.

Murray's claim for tortious interference with an employment relationship is based upon his early retirement. Murray asserts the following,

> Eady's actions were certainly outside the scope of his normal employment and were done for both his benefit and the benefit of the County. The independent doctor who evaluated Plaintiff Murray for his pension application specifically cited to the treatment Plaintiff Murray was subjected to at work. Plaintiff Murray was approved for a disability pension based upon the actions taken by the Defendants against him while he was employed by Defendant County. (Merick H. Limsky Cert. Exhibit Z). Dr. Richard Filippone stated in his report that Murray "was totally disabled from performing the normal job duties of a correction officer." (Merick H. Limsky Cert. Exhibit Z). Dr. Filippone further stated Murray, "suffered what appears to be a rather protracted and long-term series of events conducted by administration at the jail against him." (Merick H. Limsky Cert. Exhibit Z). In a supplement report Dr. Filippone stated the actions taken against Plaintiff Murray at work resulted in anxiety disorder and depressive disorder.

(Pltf. Brf. Opp. at 12.)

If Murray can prove his allegations, he will have shown wrongful and reprehensible behavior on the part of Eady and the right to a tort remedy therefor. For the purposes of summary judgment, Murray sufficiently establishes a causal connection between interference and the loss of prospective gain, thereby satisfying the third element.

Ortiz was the subject of disciplinary actions in 2013 and 2014, and was terminated from employment on October 14, 2015, for excessive absenteeism and abandonment of his post as the Officer in Charge. This proceeding was not instituted by Eady, and Eady, in his capacity as the Deputy Director, was involved in the exercise of disciplinary action involving employees of the Hudson DOC. Arguably, such actions were within the scope of his employment, thereby barring the tortious interference claim on this basis. Ortiz has not asserted any additional facts to support a causal connection between Eady's "interference" actions and the loss of prospective gain. Further, Ortiz has advanced no argument in the summary judgment opposition to rebut Defendants' arguments on this issue. A party's "failure to respond to the defendant's arguments on summary judgment constitutes an abandonment of these causes of action . . . ." *Brenner v. Twp. of Moorestown*, No. 9-219, 2011 WL 1882394, *11 (D.N.J. May 17, 2011) (citation and internal quotations and brackets omitted); *see also Desyatnik v. Atl. Casting & Eng'g Corp.*, No. 3-5441, 2006 WL 120163, *1 (D.N.J. Jan. 17, 2006) ("[W]hen a party fails to offer any argument . . . in opposition to . . . [a] motion for summary judgment, such claims . . . have been abandoned.") (citation, internal quotations, and ellipses omitted).

Aiken's assertions include the following as bases for interference:

• Defendant Director Aviles threatened the Union prior to them hiring Ms. Aiken that he would retaliate against them. • Defendant's Aviles and Eady, at nearly every meeting told the Union Presidents to "get rid of EdPDLaw". • Assistant County Counsel, Louis Rosen sent letters to the Union Attorney and President disparaging EdPDLaw. • County Counsel, Donato Batistta sent an email to all Department heads in the County telling them not to deal with EdPDLaw. • Defendant, Oscar

Aviles sat down with the Union Board and told them not to rehire EdPDLaw in 2014. • Defendant Oscar Aviles devised "The Plan" to sue the Union and EdPDLaw using Officer Joey McClary as the Plaintiff. "The Plan" was set in motion just prior to Eady's criminal trial. • Defendant Oscar Aviles and Union Officer Joey McClary emailed back and forth and she told him she was trying to get EdPDLaw fired.

(Plaintiff Aiken/Edpdlaw Brief in Opposition ("Aiken Opp'n Bfr.") at 22, ECF No. 108.)

These assertions do not establish the required nexus between the interference and the loss. Aiken has not demonstrated that any action on the part of Eady, the only remaining defendant subject to this claim, resulted in a reasonable likelihood that the interference caused a loss of prospective gain.

Aiken testified that she had a contract with PBA Union Local 109 for the period of 2010 to 2012, which was followed by a contract for the period of 2012 to 2014. Aiken testified that in July 2014, the PBA declined to renew her contract. Aiken testified that she was not paid for work performed under her 2012 to 2014 contract between 2013 and 2014 due to the PBA not wanting to part with their money. Aiken further testified that she ceased working after the trial of Eady in 2015. The record does not show a genuine issue of fact exists regarding the intentional and wrongful actions allegedly committed by Eady sufficient to show intentional and wrongful interference. There is no testimony that anything alleged to have been done by Eady resulted in a loss of prospective gain.

Based on the foregoing, Murray's claim against Eady is the sole tortious interference that survives, and the Court grants summary judgment to the County Defendants.

### E.     (Count Five) - Intentional Infliction of Emotional Distress

To prevail in an action for intentional infliction of emotional distress, Plaintiffs must show: (1) that defendants acted intentionally or recklessly, or both in doing the act and producing emotional distress; (2) that the defendants' conduct was so outrageous in character and extreme in

degree as to go beyond all bounds of decency; (3) that the defendants' action was the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979) and *Mardini v. Viking Freight, Inc.,* 92 F.Supp.2d 378 (1999). Conduct is outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988). Notably, it is well-settled that stress related to the litigation process is not compensable. *Martinez v. Capital One Fin. Corp.*, 2016 U.S. Dist. LEXIS 71708 *8 (D.N.J. 2016). Plaintiffs cannot rest on mere allegations of intentional infliction of emotional distress but must present at least some actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248.

Eady concedes that in 2012 he surreptitiously recorded several phone calls between members of the Correction Officers Union. (ECF No. 103, at 2, ¶ 1.) Eady was accordingly convicted of illegal wiretapping in violation of 18 USC § 2511(1)(a). *See* 648 F.App'x 188. For purposes of summary judgment, Eady's actions satisfy elements (1) that defendants acted intentionally or recklessly, or both in doing the act and producing emotional distress; and (2) that the defendants' conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency.  Plaintiffs sufficiently allege that Eady's actions caused them emotional distress thereby satisfying the third element: (3) that the defendant's actions were the proximate cause of the emotional distress. Accordingly, Plaintiffs may submit their proofs at trial as to the fourth element: (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it.

Aside from general all-inclusive allegations, Plaintiffs have not demonstrated conduct by

Defendants other than Eady that was either extreme or outrageous. Accordingly, the Court will grant summary judgment as to Count Five and dismiss Plaintiffs' intentional infliction of emotional distress claims *with prejudice* as to the County Defendants and not Eady.

**F.      (Count Six) - Negligent Infliction of Emotional Distress**

A claim of direct, negligent infliction of emotional distress requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark,* 349 N.J. Super. 251, 277 (App. Div. 2002).  Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed. *Lascurain*, 349 N.J. Super. at 277.

The New Jersey Tort Claims Act N.J. Stat. Ann. § 59:1-1, *et seq.*, precludes the recovery of damages from a "public entity or public employee for pain and suffering resulting from any injury," unless the Plaintiffs suffered "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." *Id.* at § 59:9-2(d). Emotional distress claims, like others, are barred unless they stem from a "permanent debilitating or disfiguring physical injury" or "result in permanent physical sequella such as disabling tremors, paralysis, or loss of eyesight, that is, a 'permanent loss of a bodily function." *Srebnik v. State*, 245 N.J. Super. 344, 351 (App. Div. 1991) (affirming dismissal of emotional distress claim).

In addition to the Tort Claims Act degree of injury defense and deficient Notice, Plaintiffs' claim fails on the merits. This tort can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care. *Dello Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003). Plaintiffs must allege and

show a factual cause of action based on bodily injury or sickness resulting from fright or apprehension of danger. *Id.* at 270; *Falzone v. Busch*, 45 N.J. 559 (1965). The facts of this case do not demonstrate a duty owed, breach of that duty, bodily injury or sickness resulting from fright or apprehension of danger, severe emotional distress, or causal relation in this context.

Plaintiffs cannot dispute that the County Defendants are entitled to the protection of the Tort Claims Act. Thus, Plaintiffs' claim for negligent infliction of emotional distress fails as to the County Defendants. Moreover, the record contains no evidence of "fright or apprehension" sufficient for this type of claim.  Accordingly, the Court grants summary judgment on Count Six and dismisses it *with prejudice*.

### G.    (Count Seven) - Employer's Breach of Employee Manual

Count Seven alleges a breach of the employee manual. Complaints asserting a tort for violations of an employee manual are precluded by the existence of the Collective Bargaining Agreement, with complete preemption under § 301 Labor Management Relations Act ("LMRA"). *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 (1985) (finding preemption applied to tort and contract actions). State Court complaints are found to be preempted by § 301 of the LMRA where the claim is "(1) founded directly on rights created by a collective-bargaining agreement, or (2) substantially dependent upon an analysis of the collective bargaining agreement." *Costa v. Verizon New Jersey, Inc.,* 936 F. Supp. 2d 455, at 459 (D.N.J. 2013) (citation omitted).

As members of PBA Locals 109 and 109A, Plaintiffs are covered by a Collective Bargaining Agreement. It is well established that employees covered by Collective Bargaining Agreements are precluded by those agreements from asserting breach of employment contract claims. *See Costa*, 936 F. Supp. 2d 455. In *Costa*, Plaintiffs alleged, *inter alia*, that Verizon breached its code of conduct. (*Id.*) The Court dismissed the claim, finding it was preempted by

§301 of the Federal Labor Management Relations Act. In *Fischer v. G4S Secure Solutions U.S.A., Inc.*, 2011 WL3859742 (D.N.J. 2011), Judge Simandle found that Plaintiffs' breach of employment manual claim was preempted by the same Act. *Id.* at \*4; *see also Johnson v. NBC Universal Inc.*, 409 F. App'x 529 (3d Cir. 2010) (where the Third Circuit held Plaintiffs' breach of contract claim was preempted by the F.L.M.R.A. *Id.* At 531).

Here, where Plaintiffs have not brought any claim under § 301 of the LMRA, their breach of contract claim, being preempted by the same, must fail. Further, other New Jersey courts have recognized that employer policy manuals and codes of conduct do not constitute valid contracts subject to what is written therein. *See Tripodi v. Johnson & Johnson*, 877 F. Supp. 233, 238 (D.N.J. 1995); *Maietta v. United Parcel Service, Inc.*, 749 F. Supp. 1344, 1361 (D.N.J.) It is assumed that Plaintiff is asserting in this Count a claim pursuant to the case of *Woolley v. Hoffmann-LaRoche, Inc.*, 99 N.J. 302, modified, 101 N.J. 10 (1985). This case held that a personnel manual could contain implied and enforceable promises concerning when an employee could be fired. The manual is to be read in accordance with the reasonable expectations of the employees.

There is no evidence of any breach of any provision of the employment manual. The Plaintiffs were in Civil Service positions governed by the Civil Service Statutes and Regulations of the State of New Jersey, and compliance was had with those statutes and regulations. There was also compliance with the content of the employee manual, and the Plaintiffs have not shown a breach of any provision thereof.  And as to Aiken, she was not an employee of Hudson County. Accordingly, the Court will grant summary judgment as to Count Seven.

### H.    (Count Eight) - Employer's Liability Under *Respondeat Superior*

In *Monell*, the Supreme Court rejected government liability on the doctrine of *respondeat superior*. 436 U.S. 658. A government body cannot be held liable under §1983 merely because it

employs a tortfeasor. *Id.* at 690-91.  Similarly, in *Ingram v. Township of Deptford,* the New Jersey District Court held that *respondeat superior* liability does not apply to government entities pursuant to N.J.S.A. 10:6-2.  No. 11-2710 (JBS.AMO), 2012 WL 5984685, *9 (D.N.J. Nov. 28, 2012). The cited cases reflect that there is no *respondeat superior* liability permitted in conjunction with 42 U.S.C. § 1983.

Here, Plaintiffs have asserted that their civil rights were violated when telephone communications were intercepted by Eady and assert claims pursuant to 42 U.S.C. § 1983. The Amended Complaint contains numerous other claims wherein Defendants Hudson County and the Hudson DOC are the named defendants. Count Eight of Plaintiffs' Amended Complaint, while unquestionably based on acts of Eady, has inclusive language that concludes that all defendants must be held to account.

It is well-established, however, that the liability of a defendant in a Section 1983 Civil Rights Action cannot be premised on *respondeat superior* thus, this claim must fail. Moreover, due to the deficiency of Plaintiffs' Tort Claim Notice, no common law tort liability claims survive as to the County Defendants. Even assuming arguendo that Plaintiffs filed a proper Tort Claim Notice, Eady's serious criminal acts were clearly outside the scope of his employment and "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Davis v. Devereux Found.,* 209 N.J. 269, 303 (2012) (citations omitted).  Accordingly, the Court grants the County Defendants summary judgment as to Count Eight.

**I.**      **(Count Nine) - Violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.**

In Count Nine of the Amended Complaint, Plaintiffs allege that Defendants violated the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et. seq.

Under CEPA, the Plaintiffs must allege engagement in an activity protected by CEPA, that they were subjected to an adverse employment decision, and that there was a causal connection between the two. *Bowls v. City of Camden*, 1997 WL 202096, *5 (D.N.J. 1997). A CEPA violation further requires a reasonable belief that the employer's conduct violated a law or rule or regulation promulgated pursuant to law and that the employee objected to the conduct. *Matthews v. New Jersey Institute of Technology,* 717 F.Supp.2d 447 (D.N.J. 2011). To invoke this statute, the employee who intends to report alleged wrongdoing must advise a supervisor in writing and give the supervisor a reasonable opportunity to correct the problem, N.J.S.A. 34:19-4. Further, the statute provides, in relevant part, that: "Upon a violation of any provisions of this act, an aggrieved employee or former employee may, *within one year,* institute a civil action in a court of competent jurisdiction." N.J.S.A. 34: 19-5 (emphasis added). "A cause of action under the statute arises upon the commission of a violation by the employer." *Daniels v. Mut. Life Ins. Co.,* 340 N.J. Super. 11, 16 (App. Div. 2001).

Once the CEPA claim commences, the employees' rights or remedies under any contract, collective bargaining agreement, state law, rule, or regulation under the common law will be deemed waived. N.J.S.A. 34:19-8. In a CEPA action, the plaintiff must set forth the specific terms of a statute or regulation with a clear expression of public policy that would be violated if the facts as alleged are true. *Fineman v. New Jersey Dep't of Human Servs.*, 272 N.J. Super 606, 620 (App. Div. 1994), cert. denied 138 N.J. 267 (1994).

Here, even if Plaintiffs can show some fact that is possibly compliant with the CEPA reporting requirements, they fail to demonstrate a causal connection between anything Plaintiffs reported and any alleged adverse job actions. No one was disciplined for giving information to EDPD Law. (Murray Transcript 91:24 to 92:1) (County SOMF as to Murray ¶ 10, ECF No. 102.)

Further, the first Notice of Claim was dated August 15, 2012, and Plaintiffs' initial Complaint was filed February 7, 2014. Therefore, Plaintiffs missed the one (1) year Statute of Limitations to assert a CEPA claim. Lastly, this claim is inapplicable to Aiken, as she was not an employee of the County.  Accordingly, the Court will grant the County Defendants summary judgment as to Count Nine.

### J.      (Count Ten) - Common Law Pierce Claim for Retaliation

In Count Ten, Plaintiffs assert a "Pierce Claim" of retaliation. Under New Jersey Law, *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980), a cause of action exists in the State of New Jersey in tort or contract or both for wrongful discharge when the discharge is contrary to the clear mandate of public policy. Public policy includes legislation, administrative rules, regulations or decisions, and judicial decisions. *Id*. at 72. According to *Pierce*, the public policy cause of action must be carefully delineated so as not to interfere with the employer's right to make business decisions and choose the best personnel for the job. *Id*. at 69. It is Plaintiffs' threshold burden to identify the clear mandate of public policy relied on and failure to do so will result in a dismissal. *Id*. at 73. Plaintiffs have the additional burden to prove causation, that is, discharge in retaliation for taking action and opposition to corporate action, which violated the clear mandate of public policy and not for some other reason. *House v. Carter-Wallace, Inc*., 232 N.J. Super. 42, 54 App. Div. 1989).  Each case requires identification of an articulated public policy and implication of a public interest, as opposed to merely individual employee rights. Clear expression of public policy is a question of law for the court to define on a case-by-case basis. *Fineman*, 272 N.J. Super. at 620.

Here, Plaintiffs fail to point to a clear mandate of public policy on which they can rely. Further, even if Plaintiffs' political affiliations arguably invoke a clear mandate of public policy,

there are no material facts that demonstrate the causal connection of any such activities to any work issue.  And as to Aiken, since she was not an employee, the Court must dismiss her *Pierce* claim. Murray was not terminated, so this Count must similarly be dismissed as to him. As described in the Statement of Material Facts, Ortiz was terminated for excessive absenteeism. Accordingly, the Court grants summary judgment as to Count Ten.

### K.      (Count Twelve) - Discrimination and Retaliation in Violation of Title VII and the New Jersey Law Against Discrimination (NJLAD)

To state a *prima facie* claim for unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"), a plaintiff must produce evidence that: (1) he engaged in activity protected by Title VII and the NJLAD; (2) his employer took an adverse employment action against him either after or contemporaneous with his protected activity; and (3) a causal connection exists between that adverse employment action and his protected activity.  *Hargrave v. Cnty. of Atl.,* 262 F. Supp. 2d 393, 423 (D.N.J. 2003).

The Court will first address Plaintiff's claims under Title VII, which prohibits discrimination in employment based on protected traits. Title VII prohibits an "employer" from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).[6]  Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability, having held that, "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996); *see also Newsome v. Admin. Office of the Courts of the*

---

[6] Here, Plaintiffs have not alleged that any Defendant discriminated against them based on any of the traits enumerated in Title VII.

*State of New Jersey,* 51 F.App'x 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability"); *Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3d Cir. 2002) ("individual employees are not liable under Title VII") (citation omitted).  Accordingly, Plaintiffs have no Title VII claim against Eady individually.

Pursuant to Section 5 of Title VII, within 180 days of the events that are complained about, the Plaintiffs are to file a charge with the Equal Employment Opportunity Commission ("EEOC"), which none of the Plaintiffs did. Title VII's charge filing requirement is a mandatory processing rule. *Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1851 (2019). Accordingly, having failed to comply with this prerequisite to suit Plaintiffs cannot proceed with a Title VII claim, which the Court dismisses with prejudice.

To advance a *prima facie* case of retaliation under NJLAD, Plaintiffs must show that an employee engaged in protected employee activity, there was an adverse employment action after or contemporaneous with the employee's protected activity, and that a causal link exists between the employees' protected activity and the employer's adverse action.  *Abramson v. William Paterson College of New Jersey*, 260 F. 3d 265 (3d Cir. 2001).

Under the NJLAD, an "adverse employment action" is one "sufficiently severe or pervasive to have altered Plaintiffs conditions of employment in an important and material manner." *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 176 (App. Div. 2005). Without a loss of rank or reduction in pay, the personnel decision to change shifts or assignments or to follow the disciplinary or leave process are not the adverse employment actions envisioned by the NJLAD. Plaintiffs bear the burden of proving that their complaint that triggered alleged retaliation was made reasonably and in good faith. *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354 (2007). An unreasonable, frivolous, bad-faith, or unfounded complaint cannot satisfy the statutory

27

prerequisite to establish retaliation liability under the NJLAD. *Id*. at 350.

While Count Twelve is captioned under the NJLAD, the Court notes that Plaintiffs do not allege in the Amended Complaint that any individual Defendant aided or abetted any conduct forbidden by N.J.S.A. 10:5-12(e). Therefore, this Count as to any individual must be dismissed.

Next, Defendants argue that to the extent that Plaintiffs were disciplined either by way of fine, suspension, etc., the appropriate Civil Service procedure required by law was followed. The Civil Service Statute, at N.J.S.A. 11A:1-1, *et. seq.*, and N.J.S.A. 11A:2-13 *et. seq.*, governs appeals. The disciplinary process is delegated to the Civil Service Commission and Administrative Regulations were created providing specific procedures for minor and major disciplines. These regulations are set forth at N.J.A.C. 4A:1-1, *et. seq.* With respect to resignations not in good standing, this is governed by N.J.S.A. 4A:2-6.2(c), which provides that unexcused absences of five days or greater are considered resignations not in good standing.

As to Ortiz, he specifically raised discrimination and retaliation as a defense to his disciplinary actions. He raised discrimination and retaliation for union activity at the departmental level, where there was a hearing, and he raised it at the Office of Administrative Law, where there was another hearing. Indeed, even the opinion of the Office of Administration Law notes that Ortiz raised as an affirmative defense to his being disciplined that he believes he was being discriminated against or retaliated against for his union activity. This defense was determined on the merits and rejected by the Office of Administrative Law. There were no further appeals after that. Under New Jersey law, if an affirmative defense is raised in a disciplinary hearing, and heard on the merits, it is conclusive of the issue in any subsequent civil suit alleging such discrimination or retaliation.

In this case, Ortiz alleges that these disciplinary actions were improperly brought and were retaliatory or discriminatory because of his union activity. This is especially so for the discipline

for altering the line-up, as noted in the Civil Service Opinion of August 6, 2014. Having raised this as an affirmative defense to the disciplinary action and it having been rejected, he cannot assert it now in an affirmative civil claim. This was the holding in several New Jersey cases, including *Winters v. North Hudson Regional Fire and Rescue*, 212 N.J. 67 (2012); *Wolff v. Salem County Correctional Center*, 439 N.J. Super. 282 (App. Div. 2015); and *DiBuonabentura v. Washington Township*, 462 N.J. Super. 260 (App. Div. 2020).

Here, in all three disciplinary actions, the positions taken precluded an affirmative civil claim for damages arising out of that same conduct. The courts in this context embraced a broad view of estoppel in discipline cases. *DiBuonabentura*, at 271. A litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline, raise a retaliation defense, and then hold back on the defense to save it for later duplicative litigation. *Id.* at 271-272 (citing *Winters,* 212 N.J. at 72-73). If the employee raises the retaliation defense in the administrative system, the employee and the employer must live with that outcome, including its potential preclusive effect on related employment discrimination litigation as a matter of equitable application of estoppel principles. *Id.* Arguably, Plaintiffs' eventual separation from employment constitutes "adverse employment action" and is one "sufficiently severe or pervasive to have altered Plaintiffs conditions of employment in an important and material manner." *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 176 (App. Div. 2005).

As previously stated herein, Murray's claim for tortious interference with an employment relationship is based upon his early retirement. Murray specifically links a causal connection between Eady's criminal acts of interference and his separation from employment. Ortiz, however, fails to satisfy the required "causal link between the employees' protected activity and the

employer's adverse action" here. *Abramson*, 260 F.3d 265.

Ortiz was the subject of disciplinary actions in 2013 and 2014 and was terminated from employment on October 14, 2015, for excessive absenteeism and abandonment of his post as the Officer in Charge. Ortiz has not produced evidence that the disciplinary action is attributable to retaliatory motives or of any temporal proximity between the employer's action and any protected activity. Consistent with the standard of review on a motion for summary judgment, the Court must evaluate the evidence relating to these factors while drawing all reasonable inferences in favor of Plaintiffs and deny summary judgment unless it concludes that such evidence is insufficient, as a matter of law, to permit a reasonable factfinder to conclude that Plaintiff was subjected to an objectively hostile and abusive working environment. The Court concludes that the evidence here is insufficient and, accordingly, grants summary judgment as to Count Twelve.

**L.      (Count Thirteen) - Violation of the New Jersey Constitution and Civil Rights Act, N.J.S.A. 10:6-2 et seq.**

Count Thirteen alleges violations of the New Jersey Constitution and the New Jersey Civil Rights Act.

As the Court previously stated herein, Plaintiffs must demonstrate a "policy or custom" on the part of County Defendants to establish liability under §1983, and under the New Jersey Civil Rights Act. *See Monell,* 436 U.S. at 694; *see also Ramos,* 429 N.J. Super. 13, 23 (App. Div. 2012). As previously stated herein, the Court dismissed the federal civil rights claims based on the lack of any nexus between Eady's actions of recording telephone calls and his position as Deputy Director, thereby eliminating the notion that he was acting under the color of law. Moreover, the record contains no evidence of a policy or custom of the County Defendants. Accordingly, the Court similarly dismisses the New Jersey Civil Rights Act claims.

Plaintiffs have not specified in Count Thirteen of the Amended Complaint which provision

of the New Jersey Constitution is alleged to have been violated. However, because the Court has already determined that Plaintiff has not sufficiently stated a discrimination claim under the federal Constitution, and because courts interpret the New Jersey Constitution analogously to the federal Constitution, *see Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 444 (D.N.J. 2011), the Court similarly dismisses the New Jersey constitutional claims.   Accordingly, Count Thirteen is dismissed.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the County Defendant's motion for summary judgment (ECF No. 102) is **GRANTED**, and Plaintiffs' Amended Complaint (ECF No. 5) (the "Amended Complaint") in its entirety is **DISMISSED** *with prejudice* as to the County Defendants.  Eady's motion for summary judgement (ECF No. 103) is **GRANTED in part** and **DENIED in part**, **GRANTED** as to Counts One, Six, Seven, Eight, Nine, Ten, Twelve, and Thirteen in the Amended Complaint, which are **DISMISSED** *with prejudice*, and **DENIED** as to Counts Two, Three, Four, and Five**,** which remain as to Eady only.  An appropriate Form of Order accompanies this Opinion.


DATED:  October <u>13</u>, 2023

<u>s/ Julien Xavier Neals</u>
**JULIEN XAVIER NEALS**
**United States District Judge**